Edwards, Ch. J.
delivered the following opinion of the court Fleming and- Johnson were complainants in chancery, seeking relief against elder grants. They claimed Under a. settlement and pre-emption granted to Robert Ralston, afterwards, assigned and patented ' to Thomas Henderson ; and under an entry on a treasury warrant, made on the 23d of January 1783, in the names of Gillaspie and Brooks. The defendant claimed; up-der George Zimmerman’s settlement .and pre-emption, and under a treasury warrant, entered on ⅛⅛¾⅛⅜⅞ 1780, in the name of William Ledgerwood. A claim was also set up under an entry for John Tabb ; but this Wf? abandoned..
*580 The court below directed the manner of surveyings the claims of Zimmerman and Ledgerwood, and left to. the defendant all the land for which he had the elder title.) and which would be included within the respective claims of Zimmerman and Ledgerwood, when so surveyed. The balance of the land in dispute, was decreed to the complainant, as having the superior equitable claim therefor, under the entry of Gillaspie and-Brooks,' and under Thomas Henderson.
From this decree, Wilson appealed ; and here contends, that the decree is erroneous, because the entries of Ralston’s settlement and pre-emption, do not cover the* land in controversy ; and the entry of Brooks and Gil-laspie is vague and uncertain ; and because the appellant has the best title under his entries.
The establishment of the entries under which the appellant claims, is. not complained of by him ; nor can the manner of surveying those entries, as directed by the court below, be objected to.
The question is, did the court decree more land from the appellant, than they ought to have done ?
As Henderson’s claims, as assignee of Ralston, are surveyed, in part, contrary to location, the decree must be erroneous, unless the entry of Gillaspie and Brooks’ is valid. This entry is in the words and figures following:
“ David Gillaspie and Thomas Brooks, assignees, enter 7000 acres of land, on a treasury warrant, No. 11,462, beginning on Stoner’s fork of Licking, where the lpwer salt spring trace crosses said fork, and running from thence along the said trace to Harrod’s lick ; from, thence a 3J\f, E. course to Hinkston’s fork ; from^thence up Hinkston’s fork to th,e upper salt spring trace ; from thence along the upper salt spring trace to Stoner’s fork, and down Stoner’s fork to, the beginning ; to include 7000 acres of the best vacant land within that boundary, if there be. that quantity fit for cultivation.”
Two traces are represented on the plat, as intended, by the upper salt spring trace. According to the qnev the boundary given did not include quite 7000 acres ; according to the other) it included upwards of 15,000. or 20,000 acres. If the latter, it was contended, that what land was vacant; what fit for cultivation ; is uncertain; not apparent; and very indefinite.
*581 This produced the greatest objection and doubt, as to the propriety of the decree of the court below. They took the upper, or middle trace, in preference to the up-Íwrmost trace. The lower trace, Hinkston, Harrod’s ick, and Stoner, were notorious, as called for in the entry. Both traces contended for as the upper salt spring trace, are well established as existing, and used before the date of the entry. The uppermost trace was, perhaps, most generally known, and called the upper salt spring trace ; and was by some, called the upper blue lick trace ; by some, the “ Plumb lick trace,” or “ Strode’s trace.” The uppermost trace seems to have been generally known, from Hinkston towards Stoner, as far as the Plumb lick, before the date of the entry. The lower salt spring trace, that is to say, from Boonsborough to the lower blue licks, is proved to have been marked out in 1775 ; what is called the upper salt spring trace, (which passes by plumb lick) R. M’Mullin swears he assisted to mark out in 1789, though he says he believes it was so called before, by some people ; but the middle trace was also known, and called by some as “ the upper salt spring trace" and was plainly beaten, as early as 1780, and was travelled in going to the upper salt spring, from Boonsborough. This is particularly proved by Oswald Townsend, and Samuel Boone, jun. If both traces, then, were called and known as the upper salt spring trace, before the date of the entry, let us resort to that, to see to which the preference should be given.
The expressions in the entry, “ to include 7000 acres of th‘e best vacant land, if there be that quantity fit for cultivation,” have been urged as an indication that the uppermost trace was intended.
They cannot have any great influence in deciding the question, as to which trace the locator had ⅛ view; but the doubt expressed, whether the quantity could be had within the bounds, seems rather to favor the restriction to the middle trace.
There could not be a doubt, but that the quantity could be obtained by going to the Plumb dick trace ; unless the locator is supposed to have meant to give himself room to play about and choose the best land for cultivation, and clear of former claims, within fifteen or fwenty thousand acres.
If such wer@ the unequivocal meaning of the entry. *582 some difference of opinion would exist, perhaps, amongst the members of the court, as to the validity of the entry. But a person acquainted with the relative situation of Stoner, Harrod’s lick, Hinkston, the middle, and the lower traces, might reasonably doubt whether 7000 acres would be obtained and included in the bounds prescribed by the entry.
No person was bound to locate or survey lands unfit for cultivation ; and if any part should be occupied by former entries, the party was not bound to waste his warrant upon such part.
In this entry, there seems to be abundant caution to to save the warrant from a barren and unprofitable location ; but we see no evidence that the locator wished a greater quantity than his warrant entitled him to.
If it were indifferent, then, upon the face of the entry, and the facts alluded to therein, whether the upper or the uppermost trace was. intended ; and the one would stand with the law, the other against the law; the former construction ought to prevail, ut res magis valeat quant pereat. But a person who had pursued the directions of the entry, from the beginning along the lower trace to Harrod’s lick, thence to Hinkston, and up that stream till he arrived at the middle trace, would have concluded, in common reason and belief, that it was the, trace he was to pursue to Stoner.', If he had known, as well he might, that this trace led to the upper salt spring, and that it would give the quantity, or..nearly so⅜ he must have been satisfied that the allusion of the entry was to that trace.
Upon this view of the entry, this court is of opinion, the entry of Gillaspie and Brooks, was rightly supported by the circuit court ; and that it gave the appellees in conjunction with the settlement and- pre-emption of Ral-ston, assigned to Henderson, the superior equitable claim,, to the land, as decreed by the circuit court.
Decree affirmed.